UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| PHYLLIS G. BARNES, and WALTER R. BARNES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:15-cv-556-PLR-HBG |
| GREG MALINAK, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendants Greg Malinak and Debbie Malinak's Motion to Exclude the Testimony of Russell Kendzior as an Expert at Trial [Doc. 62] and Defendant Sidney James Motor Lodge, Inc., d/b/a/ Olde Gatlinburg Rentals's Motion to Exclude Testimony of Russell J. Kendzior [Doc. 63]. The Plaintiffs have responded [Docs. 71 and 72] in opposition to the Motions, and Defendant Sidney James Motor Lodge, Inc., d/b/a/ Olde Gatlinburg Rentals, filed a Reply. [Doc. 80].

The parties appeared before the Court on July 12, 2017, for a motion hearing. Attorney Darren Berg appeared on behalf of the Plaintiffs. Attorney Mabern Wall appeared on behalf of Defendants Greg Malinak and Debbie Malinak (collectively, the "Malinaks"). Attorney Greg Brown appeared on behalf of Defendant Sidney James Motor Lodge, Inc., d/b/a/ Olde Gatlinburg Rentals ("Sidney"). During the hearing, the Defendants submitted the video deposition testimony of Russell Kendzior as an exhibit. The Defendants' expert, John Lefler, testified at the hearing.

Following the hearing, the Defendants filed Supplements [Docs. 90 and 92] to their Motions. The Court has considered all of the above filings and the experts' testimonies presented at the hearing. Accordingly, for the reasons more fully explained below, the Court **DENIES** the Defendants' Motions [**Docs. 62 and 63**].

## I.      BACKGROUND

The Plaintiffs filed their Complaint on December 16, 2015, [Doc. 1], and later amended the Complaint on May 19, 2016. [Doc. 17]. The Amended Complaint states that on April 9, 2015, the Plaintiffs rented a condominium at Olde Gatlinburg Place for a weekend vacation. [*Id.* at ¶ 7]. The Amended Complaint alleges that the Malinaks own the condominium and that Defendant Sidney cleans, manages, or otherwise maintains the units. [*Id.* at ¶¶ 9-10]. In addition, the Amended Complaint states that Defendant Sidney is the exclusive agent for renting and managing the unit in question. [*Id.* at ¶ 12].

The Amended Complaint alleges that on April 10, 2015, Plaintiff Phyllis Barnes entered the bathroom for the purpose of using the bath/shower. [*Id.* at ¶ 14]. She laid a cloth bath mat, which upon information and belief, was provided by the Defendants for use as a bath mat, on the tile floor in front of the bathtub. [*Id.* at ¶ 15]. The Amended Complaint continues that the bath mat provided by the Defendants was made entirely of cloth, with no rubber backing or similar material that would prevent the bath mat from slipping on a tile floor. [*Id.* at ¶ 16]. In addition, the Amended Complaint states that upon information and belief, the Defendants cleaned/polished the floor of the bathroom using a substance that increased the slipperiness of the floor, thereby making the floor a latent danger when the cloth bath mat provided by the Defendants is placed on the floor and thereafter stepped on by someone exiting the shower. [*Id.* at ¶ 17]. The Amended Complaint states that Plaintiff Phyllis Barnes stepped out of the bath/shower, and she placed her

left foot on the cloth bath mat. [*Id.* at ¶ 18]. The bath mat suddenly, and without warning, slid across the bathroom floor, causing Plaintiff Phyllis Barnes to fall and suffer severe injuries. [*Id.* at ¶ 19]. The Amended Complaint continues that the responding officer commented that the bathroom floor was very slippery. [*Id.*].

The Amended Complaint alleges that the Defendants owed the Plaintiffs, as guests, a duty to provide a bath mat with backing material that would prevent slipping on the bathroom floor. [*Id.* at ¶ 20]. In addition, the Amended Complaint avers that the Defendants owed Plaintiffs a duty to clean and/or polish the bathroom floor utilizing substances that do not increase or otherwise contribute to the slipperiness of the floor. [*Id.* at ¶ 21]. The Amended Complaint alleges negligence, loss of consortium and loss of society. [*Id.* at ¶ 29].

The Plaintiffs obtained Russell Kendzior, with Traction Experts, Inc., [Doc. 62-1] to testify in this case. Kendzior opines that the Defendants breached the standard of care to provide the Plaintiffs with a bath mat that would not slip when used for exiting the bathtub. [*Id.* at 2]. Kendzior states that the Defendants failed to provide a suitable bath mat for the type of flooring that was in the condominium rented by the Plaintiffs. [*Id.*]. He further opines that bath towels are not bath mats and should not be used as such. [*Id.*]. He continues that bath towels do not have a slip resistant backing, and therefore, do not provide sufficient traction when placed on a smooth surfaced floor. [*Id.*]. Further, he states that the bath towel's design, construction, and lack of a slip resistant backing were insufficient to prevent the towel from slipping on the smooth surfaced floor as testified by the Plaintiffs. [*Id.*]. He concludes that Defendant Sidney breached the standard of care it owed to the Plaintiffs by not warning them of the risk of falling due to the slipperiness of the floor when combined with the use of the towel. [*Id.*]. Finally, he states that had a proper

bath mat been placed in the condominium for the Plaintiffs' use, the bath mat would not have slipped when Plaintiff Phyllis Barnes stepped on it while getting out of the tub. [*Id.* at 3].

On May 15, 2017, Kendzior provided a supplemental report. [Doc. 71-2]. In his supplemental report, he stated that the test method that is used to determine the slip resistance of the floor matting is published by the National Floor Safety Institute ("NFSI") 101-C "Test Method for Measuring Dry TCOF of Floor Mat Backing Materials." [Doc. 71-2 at 3]. Kendzior stated that he tested the Transitional Coefficient of Friction ("TCOF") on the exemplar bath mat per the NFSI 101-C test method and the test results revealed a dry TCOF value of .14, which is below the required minimum value of .5 to be considered a high-traction mat. [*Id.*]. Kendzior states that given the low level of slip resistance or traction, the bath towel in question would increase the likelihood of sliding on a smooth surfaced floor. [*Id.*] Kendzior also opines that the Defendants should have provided at least one vertically mounted grab bar near the front critical support service wall for the bathtub/shower enclosure. [*Id.* at 1].

## II.    POSITIONS OF THE PARTIES

The Malinaks assert that Kendizor is not qualified to issue the opinions contained in his report or to testify regarding the conclusions he purports to have reached in this case. The Malinaks argue that Kendzior is a mathematician and not an engineer or architect. In addition, the Malinaks argue that he does not have any training in terry cloth towels or their use as bath mats. Further, they contend that Kendzior's opinions and conclusions lack sufficient factual basis or scientific reliability to be admissible under the Federal Rules or *Daubert*. The Malinaks submit that his opinions regarding the floor (*i.e.,* the floor is slippery, the bath mat was inappropriate for the type of flooring, or that the mat slipped because of the type of flooring) are unreliable and irrelevant because he has not seen, examined, or inspected, or tested the flooring. The Malinaks state that

Kendzior had insufficient facts to reach the conclusion he asserts and that he relied on photographs and Plaintiff Phyllis Barnes's testimony in providing his opinions. The Malinaks aver that Kendzior states broad conclusions about the Defendants breaching the standard of care, citing to different standards, but he acknowledged the standards and codes he cited were all voluntary and not mandated by any law. Further, the Malinaks assert that the standard cited is not applicable to the present matter. The Malinaks state that Kendzior also issued certain opinions about the lack of a grab bar in the bathtub, but the lack of a grab bar is not an issue in this case and it is not addressed in the Amended Complaint. The Malinaks explain that the Plaintiffs have not alleged that the fall was due to the lack of a grab bar. Furthermore, the Malinaks argue that Kendzior's reasoning and methodology underlying his conclusions are not scientifically valid and not based in science. The Malinaks continue that Kendzior's techniques or theories have not been tested and have not been objectively challenged. They assert that Kendzior's rate of error and the standard of testing do not indicate reliability.

Defendant Sidney argues that Kendzior's opinions are based on insufficient data—that is, the subject floor surface's slip-resistance is unknown. Defendant Sidney continues that the principals and methods upon which Kendzior's testimony is based are not relevant or reliable. Defendant Sidney argues that bath mats are outside the scope of the standards that Kendzior relies on, and therefore, are not relevant. In addition, Defendant Sidney asserts that Kendzior did not reliably apply the methods to the facts of the case.

The Plaintiffs filed responses [Docs. 71 and 72] to both Motions. The Plaintiffs assert that the issues raised by the Defendants go to the weight of the evidence and not to admissibility. The Plaintiffs assert that Kendzior performed tests on a test tile representative of average floor material, rather than the tile from the condominium. The Plaintiffs continue, however, that they do not

contend that Plaintiff Phyllis Barnes slipped on the floor at issue but rather the bath towel. Further, the Plaintiffs provide that Kendzior relied on other statements in this case, stating that the floor was slippery. The Plaintiffs further state that Kendzior's experience and knowledge of slip-and-fall accident prevention qualify him as an expert as contemplated by Rule 702. The Plaintiffs assert that Kendzior's expert opinion will aid the trier of fact by providing context to the available evidence and testimony and that a narrow focus on select *Daubert* factors is an improper Rule 702 inquiry. Finally, the Plaintiffs distinguish the court decisions that have excluded Kendzior as an expert.

Defendant Sidney filed a Reply [Doc. 80], asserting that the cited cases in the Plaintiffs' responses are different than the present matter.

After the hearing in this matter, the Defendants both filed Supplements [Docs. 90 and 92] to their Motions. The Malinaks state [Doc. 90] that Kendzior has only testified at trial thirty times. The Malinaks argue that he has not been scrutinized by a court under *Daubert* or the applicable rules of evidence in over 90% of the supposed 700-750 times he has been retained as an expert. The Malinaks state that Kendzior has been admitted to testify over parties' objections in only three cases and that he has been excluded from testifying in six cases. In Defendant Sidney's Supplement [Doc. 92], it also provides several court decisions that have excluded Kendzior's testimony.

## III.  ANALYSIS

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the Supreme Court of the United States stated that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. The *Daubert* standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009).

The factors relevant in evaluating the reliability of the testimony, include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970-71 (M.D. Tenn. 2002) (citing *Daubert*, 509 U.S. at 593–94). "Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty., Tenn.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138-39 (1999)). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey*, 187 F. Supp. 2d at 70-71 (quoting *Daubert*, 509 U.S. at 593-94).

The Rule 702 inquiry as "a flexible one," and the *Daubert* factors do not constitute a definitive checklist or test. *Kumho Tire Co.*, 526 U.S. at 138-39 (citing *Daubert*, 509 U.S. at 593).

Although the Rule 702 requirements are treated liberally, "'that does not mean that a witness is an expert simply because he claims to be.'" *Coffey*, 187 F. Supp. 2d at 971 (citing *Pride v. BIC Corp.,* 218 F.3d 566, 577 (6th Cir. 2000)).

With the above analysis in mind, the Court turns to the Defendants' arguments in this case.

**A. Qualifications**

The Malinaks challenge Kendzior's qualifications, arguing that he is not qualified to issue the opinions contained in his report or to testify regarding the conclusions that he purports to have reached. The Malinaks explain that Kendzior is a mathematician, not an engineer or architect. They argue that Kendzior's credentials are not related to a scientific background and will not assist the trier of fact in determining the issues in this case. The Plaintiffs respond that Kendzior's experience and knowledge of slip-and-fall accident prevention qualify him as an expert.

The Court has reviewed Kendzior's expert disclosures and his deposition testimony and finds that he is qualified to testify in this area. Kendzior obtained his Bachelor of Science degree in mathematics from Bradley University in 1985. [Doc. 62-2 at 2]. He is a Walkway Auditor Certificate Holder, which is an American National Standards Institute ("ANSI") accreditation. [*Id.* at 3]. The ANSI is a professional designation issued through the National Floor Safety Institute. [*Id.*]. He received training from the Occupational Safety and Health Administration ("OSHA") in general industry requirements, and he has a license from the State of Texas to perform walkway inspections or inspections in general for the Texas Accessibility Standard. [*Id.*]. He testified that he also received other forms of training through his twenty (20) years of experience from organizations, such as the National Safety Council, the American Society of Safety Engineers, and the American Society of Testing and Materials ("ASTM"). [*Id.* at 4]. With respect to bath mats, Kendzior testified that he has had training in all areas of walkway safety, such as mats, floor, and

rugs. [*Id.*]. He explained that he has not had training with respect to terry cloth bath towels, but he has had experience in that area as it relates to a pending standard that is being developed by ASTM for bath mat performance. [*Id.* at 4-5]. Kendzior continued, "There is actually a standard being developed for bath mats right now, and I'm part of the committee on the ASTM that's developing that standard." [*Id.* at 5].

The Court finds that Kendzior's experience and training qualify him to testify in this case. Accordingly, the Court finds the Defendants' arguments not well-taken.

### B. Sufficient Factual Basis or Scientific Reliability

The Defendants argue that Kendzior's opinions are not based on scientific evidence or applicable standards. The Defendants claim that his opinions with respect to the floor (*i.e.,* that the floor is slippery, that the bath mat was inappropriate for the type of flooring in the bathroom or that the mat slipped because of the type of flooring) are unreliable and irrelevant because Kendzior has not seen, examined, inspected, or tested the flooring. The Defendants argue that Kendzior relied on photographs and assumptions for his opinions.

The Plaintiffs respond that Kendzior determined the coefficient of friction for the towel, which is the primary scientific component of his analysis and testimony. In addition, the Plaintiffs assert that Kendzior relied upon the description of the floor by an officer (as alleged in the Complaint) and the description given by Plaintiff Phyllis Barnes. The Plaintiffs state that Kendzior is permitted to rely upon such evidence.

The Court finds the Defendants' arguments not well-taken. As mentioned above, the Defendants emphasize that Kendzior did not inspect the floor where Plaintiff Phyllis Barnes fell. During Kendzior's deposition, the following exchange occurred:

> Q.   And you said you used a test tile to test the transitional coefficient of friction; is that correct?

      A.    Yes

      Q.    The floors in this condo are not tile, though, are they?  They're vinyl or linoleum.

      A.    Yes.  And again, we're just using a representative average type of floor material.  In this case, as I said, I don't know what the coefficient of friction of the tile was in this particular bathroom, but it would be comparable to an average surface, I assume.

[Doc. 62-2 at 27-28].

The Court finds that such alleged deficiencies with respect to the flooring can be addressed through vigorous cross-examination and that "weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993); *see also Spears v. Cooper*, No. 1:07-cv-58, 2008 WL 5552336, at *5 (E.D. Tenn. Nov. 17, 2008) ("[C]redibility attacks, such as the use of incorrect or incomplete data in formulating an opinion, are intended for cross-examination.").  Further, the Court notes that at the hearing, the Plaintiffs claimed that the floor had not been preserved after the accident.

The Defendants state that Kendzior acknowledged that the slip resistance of the floor would impact the determination of whether the bath mat presented a slip hazard.  Kendzior, however, testified that he tested the bath towel using a representative average type of floor material.  The fact that Kendzior did not test the actual floor, but utilized an exemplar tile, is not a basis to exclude his testimony.  For instance, when questioned about the floor, Kendzior testified as follows:

      A. A standard is – standards have to ultimately measure a variable against a known factor.  So we standardized the floor.  We don't want that to be a variable, because we're measuring whether or not this is in compliance, not this on any floor. . . .

> . . . So standardization is based on identifying what is it we're trying to standardize, what are we trying to measure. Well, in this case, NFSI 101-C is the standard that's designed to measure the transitional coefficient of friction of this, of the mat itself on a standardized tile. But to your point, the tile doesn't necessarily reflect what the coefficient of friction of the floor was at this particular room.

[Doc. 71 at 13]. While the Defendants' expert, John Lefler, disagrees with the above statement, *see* [Doc. 84 at 11], the Court finds that the jury can weigh both opinions and determine which opinion deserves more weight.

Further, the Defendants assert that Kendzior made broad conclusions about the Defendants breaching certain standards of care and that Kendzior acknowledged that the cited standards and codes were all voluntary and not mandated by any law.[1] The Court finds that this is not a reason to exclude Kendzior's testimony. Instead, the Defendants may present such information through cross-examination. The Defendants also assert that the cited standards are not applicable in this case, but Kendzior testified that they can be applied in this case.

The Defendants compare the instant matter with *Alsip v. Wal-Mart Stores E., LP,* No. CV 14-476-CG-M, 2015 WL 7013546, at *1 (S.D. Ala. Nov. 12, 2015), *aff'd,* 658 F. App'x 944 (11th Cir. 2016). In *Alsip*, the case arose from a slip and fall that occurred on the defendant's premises. *Id.* The plaintiff alleged that the painted crosswalks were negligently and/or wantonly maintained, making them not reasonably safe. *Id.* More specifically, the plaintiff alleged that the painted area had not been painted recently or it did not contain an anti-slip substance in the paint. *Id.* Kendzior

---

[1] At the hearing, the Court inquired as to whether Kendzior's statements regarding Defendants' alleged breach were legal conclusions. The Plaintiffs responded that the Defendants did not raise this issue in their briefs, but if the Court was concerned with such opinions, Kendzior's testimony could be limited. Because the issue was not raised, however, the Court will not issue a ruling. The District Judge, of course, may rule on any objections to legal conclusions presented at the trial.

opined that the painted walkway that the plaintiff slipped and fell on represented an unreasonably dangerous condition and was not in compliance with the industry standards for being slip resistant. *Id.* At his deposition, Kendzior testified that the best way to determine whether there is an aggregate in the paint would have been to test it with a tribometer, which would measure the coefficient of friction of the surface. *Id.* at *4. In excluding Kendizor's opinion, the court noted, "While Kendzior is experienced in testing for slip-resistance and is knowledgeable about what coefficient measurements are sufficient to demonstrate that the risk of slip and falls has been minimized, his analysis *did not involve any testing*." *Id.* at *4 (emphasis added). The court emphasized that Kendzior did not perform any tests and the data that he reviewed, by his own admissions, was not sufficient to reach his stated conclusion. *Id.* The court excluded Kendior's testimony. *Id.*

The Court finds the instant matter different from the circumstances presented in *Alsip.* Here, Kendzior has opined that the bath mat is not slip resistant, and he performed testing on the exemplar bath mat. The Court finds that the other cases identified by the Defendants are distinguishable for similar reasons. For instance, in *Parker v. Wal-Mart Stores, Inc.*, 267 F.R.D 373 (D. Kan. May 5, 2010), the court also excluded Kendzior's opinions. In *Parker*, the plaintiff slipped and fell in water on the defendant's premises. *Id.* at 374. Kendzior opined that the defendant's mode of operation would predictably result in people slipping and falling and that the number of employees hired to do floor sweeps was inadequate. *Id.* The court excluded the opinion, reasoning that Kendzior did not know when the floor area was lasted checked by an employee, he had no knowledge of how many maintenance people were on duty around the time of the accident, he had no industry guidelines that supported his opinion that the number of employees was inadequate, and he agreed that his opinion regarding the employees was his

personal opinion. *Id.* at 375. Further, the court stated that Kendzior's opinions that the defendant's mode of operation was negligent and the employees were negligent constituted inadmissible legal conclusions. *Id.*

The opinions that Kendzior offers in the instant matter are different than the opinions offered in *Parker. Kalish v. HEI Hosp., LLC*, 980 N.Y.S.2d 80, 83 (2014) (excluding Kendzior because he never examined the actual floor and he did not test the mat exemplar against the floor, *or against any floor*") (emphasis added).[2] Further, the Malinaks cite *Ryan v. Timerland Co.*, No. 2:10-cv-0002, 2011 WL 4549677, at *1 (E.D. Mo. Sept. 30, 2011), to support their assertion that Kendzior has been excluded by other courts. In *Ryan*, however, the court limited Kendzior's testimony, stating that any opinion he offers regarding the duty or standard of care and whether it was violated was a legal conclusion. *Id.* Accordingly, the Court finds the Defendants' arguments not well-taken.

### C. Methodology

The Defendants challenge Kendzior's methodology. Specifically, the Defendants assert that Kendzior's publications have not been peer-reviewed and that his techniques or theories have not been tested or objectively challenged. For instance, the Defendants assert that the NFSI-101C standard used to test the bath mat in this case was a standard used and created by NFSI, approved and codified by NFSI's Board of Directors, and published as a voluntary standard. The Defendants argue that Kendzior founded NFSI and wrote the standards that he claims to have used to test the bath mat. Further, the Defendants assert that NFSI standard, section 1.3, provides, "No express or

---

[2] The Court notes that the Malinaks filed a Supplement, citing *Bosire v. Kroger Co.*, No. 1:14-cv-02604, 2016 WL 7510233, at *1 (N.D. Ga. Mar. 17, 2016), for the premise that Kendzior has been excluded by courts from testifying. The Court notes, however, that in *Bosire*, the court excluded Kendzior because the plaintiffs failed to provide his expert disclosure in a timely manner, and not because of his inability to meet the standards outlined in *Daubert*.

implied representation or warranty is made regarding the accuracy or significance of any test results in terms of slip resistance." [Doc. 62 at 11].

The Plaintiffs respond that Defendants' arguments do not support excluding Kendzior from testifying. The Plaintiffs emphasize that the standards are not peer reviewable because they are created by subcommittees.

The Court has reviewed the parties' positions and finds that the Defendants' concerns can be alleviated through cross-examination. In Kendzior's deposition, the following exchanged occurred:

> Q. Was NFSI 101C ever subject to peer review?
>
> A. Well, standards are not – in this—in this context are not peer reviewable. They're – the NFSI standard specifically is a bit different than, say, an ANSI or ASTM standard. Those are created by committees. They're consensus body committees.
>
> NFSI is more like UL, Underwriters Laboratories. UL creates UL standards for themselves, and industry there – follows them and submits to them or not. It's voluntary. NFSI develops their standards much like the UL. They're private standards. They're voluntary. And industry can either adopt them or not.
>
> Q. Okay. So these standards were never sent to any other engineers during their creation for any sort of review and feedback analysis—type process?
>
> A. I don't know what you mean by "other engineers." What other – it was a standard that was created by and for NFSI, approved and codified by the NFSI board of directors, published as an NFSI standard, as a voluntary standard.
>
> It has since gained a lot of popularity and recognition by industry – we talked about that earlier – who relies upon it and actually has their products, their floor mates, tested to the standard.

> Q.     Are you aware of anyone other than yourself that uses the standard for forensic application?
>
> A.     I'm sure quite a few people do.  It's a – it is—you mean NFSI 101-C?
>
> Q.     Yes.
>
> A.     It is the only recognized standard for measuring slip resistance of backings that I'm aware of in the world.  And so anyone that's doing work in this field purchases the standard.  We see many of the copy—that standard's being sold, so I assume people are using it, and it's being sold to a wide range of engineers and attorneys and presumably engineers that are acting as forensic engineers in matters like this.

[Doc. 72 at 17-18].  During his video deposition, Kendzior testified, "The vast majority of floor manufacturers use" the standard.  According to Kendzior's testimony, while the standard is voluntary, it is the only recognized standard for measuring slip resistance of backings. The Defendants' expert questions the NFSI standard and states that Kendzior "misrepresents 101-C throughout his deposition testimony."  [Doc. 84 at 13].  Accordingly, the Court finds that the jury will give the witnesses' testimonies the weight they deserve after considering all factors that weigh on credibility.

### D.  Reliability

The Defendants assert that Kendzior performed one test using an unreliable machine to put a figure on the transitional coefficient of friction of the bath mat.  The Defendants argue that Kendzior used a Brungraber Mark II test device, but this device is a floor tester.  The Defendants state that Kendzior testified that the bath mat tested at .14, which means that the towel moved at a steep angle, but he admitted that he did not know the angle that Plaintiff Phyllis Barnes stepped out of the tub onto the towel.  The Defendants claim that Kendzior believed that the Brungraber

device was credible given that there is a published and reviewed standard specifying how to use the device and find output values, but Kendzior does not refer to the published standard in his report or his deposition. Further, the Defendants state that Kendzior did not know the date that the device was last calibrated. In summary, the Defendants assert that the number of assumptions made to perform the test, the fact that the machine was not used for its intended purpose, the lack of recent calibration, and the fact that the only known rate of error was calculated by the expert trying to qualify the test indicate that the test is unreliable.

In his deposition testimony, Kendzior acknowledged that he was not aware of the angle Plaintiff Phyllis Barnes exited the shower because he was not present when she fell. However, he explained that he rotated the angle of the tribometer so that it would not slip and that the sample is rotated in four directions and tested at each direction. [Doc. 62-2 at 27]. As the Defendants have noted, Kendzior did not use the tribometer in compliance with the instructions. He stated that tribometers are intended to test floors and that he deviated from the instructions because he was not testing a floor. He explained, however, he measured the error rate when using the tribometer to test the bath mat, which was approximately plus or minus five percent to account for the variations of tile and movement. He further explained that most tribometers have more than a five percent error rate. He also testified that he has been trained to use the tribometer that was used in this case. While the Court is concerned that Kendzior did not use the tribometer as the manufacturer intended and was not certain when the device had been calibrated, the Court finds that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.

### E.  Grab Bars

The Defendants assert that Kendzior issued certain opinions in his Supplement Report regarding the lack of grabs bars in the bathtub.  The Defendants argue that the lack of grabs bars is not an issue in this case because it was not addressed in the Complaint or the Amended Complaint.  The Defendants claim that the Plaintiffs have never asserted that the fall was due to the lack of a grab bar.  The Defendants assert that if Kendzior's testimony is not excluded in total, a motion in limine will follow.  Further, the Defendants state that his opinion on grab bars is based on voluntary standards.

The Court has already addressed the Defendants' arguments regarding voluntary standards, and the Court will not exclude Kendzior's testimony on this basis.  Further, the Defendants state that they intend to raise the issue in a motion in limine.  Accordingly, the undersigned will defer to the District Judge's ruling on whether the grab bar has been properly alleged in this case.

## IV.  CONCLUSION

Accordingly, for the reasons stated herein, the Court **DENIES** the Defendants Greg Malinak and Debbie Malinak's Motion to Exclude the Testimony of Russell Kendzior as an Expert at Trial [**Doc. 62**] and Defendant Sidney James Motor Lodge, Inc., d/b/a/ Olde Gatlinburg Rentals' Motion to Exclude Testimony of Russell J. Kendzior [**Doc. 63**].

**IT IS SO ORDERED**.

ENTER:

_Bruce Guyton_
United States Magistrate Judge