# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| PHYLLIS BARNES and WALTER BARNES,  )<br>)<br>*Plaintiffs*,  )<br>)<br>v.  )<br>)<br>GREG MALINAK; DEBBIE MALINAK; )<br>and SIDNEY JAMES MOTOR LODGE, )<br>INC., d/b/a OLDE GATLINBURG )<br>RENTALS,  )<br>)<br>*Defendants*.  ) | No. 3:15-cv-556<br>Reeves/Guyton |

## Memorandum Opinion and Order

Counsel for the parties appeared before the Court for a pretrial conference on August 22, 2017. The Court heard, among other things, oral arguments on the pending motions in limine. In light of the parties' motions and oral arguments, the Court orders as follows:

1. The Barneses' Motion in Limine No. 1 [D. 98] is **DENIED** because they have not proved duty to preserve the evidence or culpable state of mind;

2. The Malinaks' Motion in Limine No. 1 [D. 95] is **DENIED as moot**;

3. The Malinaks' Motion in Limine No. 2 [D. 96] is **GRANTED** because the challenged evidence lacks relevance;

4. The Malinaks' Motion in Limine No. 3 [D. 105] is **DENIED as moot**;

5. The Malinaks' Motion in Limine No. 4 [D. 107] is **DENIED** for the reasons discussed below;

6. The Malinaks' Motion in Limine No. 5 [D. 108] is **RESERVED UNTIL TRIAL**;

7. The Malinaks' Motion in Limine No. 6 [D. 109] is **GRANTED in part and DENIED in part** as to Dr. Holen for the reasons discussed below and **DENIED as moot** as to Dr. Thomason;

8. The Malinaks' Motion in Limine No. 7 [D. 110] is **DENIED as moot**;

9. Gatlinburg Rentals's Motion in Limine No. 1 [D. 93] is **DENIED** because Defendants have known about the grab-bar theory since May 2017 and have been able to depose Plaintiffs' expert;

10. Gatlinburg Rentals's Motion in Limine No. 2 [D. 101] is **GRANTED** because the challenged evidence lacks relevance

11. Gatlinburg Rentals's Motion in Limine No. 3 [D. 102] is **DENIED as moot**;

12. Gatlinburg Rentals's Motion in Limine No. 4 [D. 103] is **DENIED** for the reasons discussed below;

13. Gatlinburg Rentals's Motion in Limine No. 5 [D. 104] is **RESERVED UNTIL TRIAL**; and

14. Gatlinburg Rentals's Motion in Limine No. 6 [D. 106] is **GRANTED in part and DENIED in part** as to Dr. Holen for the reasons discussed below and **DENIED as moot** as to Dr. Thomason.

Four motions in limine warrant elaboration. First are the Malinaks' Motion in Limine No. 4 and Gatlinburg Rentals's Motion in Limine No. 4. Both concern tables offered by each Defendant showing the amounts that Phyllis was charged by her doctor, the amounts actually paid, and the remaining balance. In a personal-injury suit under Tennessee law, a plaintiff can recover medical expenses only if she proves that those expenses were "necessary and reasonable." *Wilson v. Monroe Cty.*, 411 S.W.3d 431, 442 (Tenn. Ct. App. 2013). If the plaintiff serves itemized medical bills on the defendant at least 90 days before trial, there is a rebuttable presumption that the bills are reasonable. TENN. CODE ANN. § 24-5-113(b)(1). More than 90 days before trial, the Barneses served Defendants with itemized medical bills. Defendants responded by filing a notice of intent to rebut the reasonableness of those expenses. *See id.* § 24-5-113(b)(2). They now seek to rebut those expenses with proof that Phyllis's medical bills were later discounted. Their motions ask the Court to admit this proof.

These motions must be denied. There are two competing forces here. On the one hand is Defendants' statutory right to rebut the presumption presented by Phyllis's medical bills. On the other hand is the collateral-source rule. "Payments made or benefits conferred by other sources are known as collateral-source benefits." *Fye v. Kennedy*, 991 S.W.2d 754, 753 (Tenn. Ct. App. 1998) (internal quotation marks omitted). The collateral-source rule bars evidence of collateral benefits from being admitted. *Id.* Collateral benefits include forgiveness of debt. *Id.* at 764. Evidence that some medical charges were written off, then, is squarely barred by the collateral-source rule.

Defendants contend that the rule's scope was narrowed by *Dedmon v. Steelman*, No. W2015-1462-COA-R9-CV, 2016 WL 3219070 (Tenn. Ct. App. 2016). The Tennessee Hospital Lien Act allows hospitals to place a lien on patients for the medical costs not paid by insurers, as long as those costs are reasonable and necessary. TENN. CODE ANN. § 29-22-101(a). But hospitals often have two versions of costs: one for patients and insurers, and another for the lien on the patient and whoever injured the patient. *West v. Shelby Cty. Healthcare Corp.*, 459 S.W.33, 44 (Tenn. 2014). The former is discounted through hospital-insurer agreements, while the latter is not. *Id.* So in *West v. Shelby County Healthcare Corporation*, 459 S.W.3d 33 (Tenn. 2014), the Tennessee Supreme Court had to decide which version of costs was "reasonable" under the Lien Act. *Id.* It held that the undiscounted charges were unreasonable under the Lien Act and so cannot be considered when determining the plaintiff's medical costs. *Id.* at 44–45.

In *Dedmon*, the Tennessee Court of Appeals had to decide the scope of *West*. Specifically, it had to decide whether *West* defined "reasonable" medical expenses only for suits brought under the Lien Act, or whether it also defined reasonable medical expenses for personal-injury suits. *Id.* at *9. The court parsed the *West* opinion and held that it was limited to suits brought under the Lien Act. *Id.* The court also declined to extend *West* to personal-injury suits. *Id.* at *10. So in such suits, plaintiffs can still introduce their undiscounted medical bills as evidence of reasonable and necessary medical costs. *See id.*

After reaching these holdings, the *Dedmon* court considered the knock-on effects of its ruling. It acknowledged that defendants would continue to be "barred from introducing evidence of any

3

discounted medical bills," citing *Fye v. Kennedy*, 991 S.W.2d 754 (Tenn. Ct. App. 1998). *Id.* at *10. But, it continued, "existing law in this state also makes clear that Defendants are permitted to offer proof contradicting the reasonableness of the medical expenses." *Id.* In doing so, however, "they must not run afoul of the collateral source rule." *Id.* at *11. In other words, *Dedmon* did not overturn the collateral-source rule's bar on admitting evidence of discounted medical bills. *Dedmon* has no bearing on Defendants' motions in limine. Whether their medical-cost tables should be excluded depends on whether they reveal evidence of a discount.

Both proposed tables reveal evidence of a discount. The Malinaks' table includes columns for Total Expense, Accepted Amount, and Balance. [D. 107 Ex. 1]. The balance is less than the difference between the total expense and what was accepted. This implies a discount. Gatlinburg Rentals's table, meanwhile, includes columns for Amount Billed, Total Amount Paid, and Remaining Balance. [D. 103 Ex. 1]. Again, the remaining balance is less than the difference between the amount billed and the amount paid. So here too there is evidence of a discount. Because the collateral-source rule bars evidence of discounts, these tables must be excluded. Defendants' motions to admit these tables are denied. *See also Ryans v. Koch Foods, LLC*, No. 1:13-cv-234-SKL, 2015 WL 11108908 (E.D. Tenn. Aug. 5, 2015) (Lee, Mag.) (reaching the same conclusion on this issue).

Next are the Malinaks' Motion in Limine No. 6 and Gatlinburg Rentals's Motion in Limine No. 6. Both concern the testimony of Dr. Gordon Holen, DO, the doctor who operated on Phyllis after she was taken to the hospital following her fall. The motions also concern the testimony of Dr. Clayton Thomason, MD. Defendants contend that the Barneses did not properly disclose them as expert witnesses, so they should be excluded from trial. The Barneses do not plan to call Dr. Thomason anyway, so they do not oppose that part of the motion. As Defendants' motions concern Thomas, they are denied as moot.

As for Holen, these motions are granted in part and denied in part. According to the Barneses, Holen will testify about three things:

1. the surgery he performed on Phyllis;

2. whether that surgery was necessary as a result of the fall; and

3. whether Phyllis's follow-up care was necessary.

At the outset, Holen does not need to be admitted as an expert to testify about the surgery he performed on Phyllis. A doctor does not need to be admitted as an expert when he or she testifies "within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007). So Defendants' motions will be denied as it concerns this testimony.

Nor does Holen need to be admitted as an expert to testify about whether that surgery was necessary as a result of the fall. Whether a doctor's treatment is necessary is within the permissive core of issues pertaining to treatment. *See Fielden*, 482 F.3d at 870 (acknowledging that treating physicians can testify about the causes of a plaintiff's injury without being admitted as experts).

The final subject Holen might testify about, however, would amount to expert testimony. Such testimony would not be "rationally based on the witness's perception" but rather "based on scientific, technical, or other specialized knowledge." FED. R. EVID. 701. So Holen can testify about the follow-up only if he was properly disclosed as an expert or, if not, if some exception applies.

Holen was not properly disclosed as an expert. Experts must be disclosed "at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D). The deadline for expert disclosures in this case was April 1, 2017. [D. 13 § 3(e)]. The Barneses did not meet this deadline. They filed their notice of expert disclosures on March 20. The parties dispute whether Defendants actually received the disclosures. But even if they had, the disclosures were incomplete. The Barneses' disclosure had to state the subject matter of Holen's expected testimony, and a summary of the facts and opinions he was going to provide. FED. R. CIV. P. 26(a)(2)(C). Holen's Rule 26(a)(2) expert disclosure lacks the second, and it only obliquely provides the first. [D. 149 Ex. 1 at 27]. He will not be allowed to testify as an expert unless some exception applies.

No exception applies. Rule 37(c)(1) provides the only possible exception. It says, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

5

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Whether a failure is substantially justified or harmless depends on five factors: (1) the surprise to the party whom the evidence would be offered against; (2) the ability of that party to cure the surprise; (3) how much it would disrupt trial to allow the evidence; (4) the evidence's importance; and (5) the nondisclosing party's explanation for its failure. *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

On balance, these factors favor a finding that the Barneses' failure to disclose Holen as an expert was not substantially justified or harmless. First, there was no reason for Defendants to suspect that Holen would be testifying as an expert. He was disclosed twice as a fact witness—a standard role for treating physicians in personal-injury suits—before the Barneses said that he would be testifying as an expert. [D. 25 at 2; D. 39]. And in September 2016, after these disclosures, the Barneses responded to an interrogatory that no decisions had been made about experts. [D. 143 Ex. 1 No. 15]. It was not until March 20, 2017, that the Barneses finally said that Holen would be testifying as an expert. [D. 43]. And even then, the Barneses could not know the bases for Holen's expert testimony. They might have known about the bases for his testimony about the treatment he gave Phyllis. But that is not expert testimony.

Second, Defendants had little chance to cure their surprise. The Barneses insist that they served Holen's disclosure on Defendants on March 20. Defendants insist that they never received that disclosure. But either way, the disclosure did not state the basis for Holen's testimony. And as far as subject matter goes, the disclosure stated only that Holen "was the physician who treated [Phyllis] and performed surgery to repair her shattered knee after her fall." [D. 149 Ex. 1 at 27]. This is hardly a clear statement of subject matter, especially since treating physicians routinely testify as fact witnesses about the treatment they gave. At the earliest, Defendants did not learn the full subject matter of Holen's expected testimony until the Barneses supplemented their disclosure on July 7, less than two months before trial.

6

Third, and by contrast, it would not disrupt trial to allow Holen to testify on these expert issues. He will likely be testifying about fact issues anyway, so allowing him to expand his testimony would not prove a disruption.

Fourth, the evidence is important. In personal-injury cases, plaintiffs usually must prove causation and justify medical expenses through expert medical testimony. *See Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d 897, 901 (Tenn. Ct. App. 2001) (causation); *Borner v. Autry*, 284 S.W.3d 216, 218 (Tenn. 2009) (necessity and reasonableness of medical expenses). Holen is the only physician that the Barneses might call.

Last, the Barneses have not explained their failure to properly disclose Holen. Their filings on this motion emphasize the fact that Defendants should have seen Holen's expert testimony coming. What the filings lack, though, is any explanation why Holen was not completely disclosed on time. On balance, these factors point toward excluding Holen as an expert. He will be allowed to testify about the treatment he gave Phyllis and whether that treatment was necessary as a result of her fall. But he will not be allowed to testify about whether Phyllis's follow-up care was necessary.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**